[S. F. No. 1719.    In Bank.—December 21, 1900.]

MARGARET MULCAHEY et al., Appellants, v. HEZEKIAH DOW et al., Respondents.

ESTATES OF DECEASED PERSONS—DISTRIBUTION—PROCEEDING IN REM—CONCLUSIVENESS OF DECREE.—A proceeding for the distribution of the estate of a deceased person is a proceeding *in rem;* and the decree of distribution binds all who have constructive notice thereof, and, if not appealed from, is conclusive as to the whole world upon all questions of heirship.

ID.—FRAUD—INVOLUNTARY TRUST—SHOWING REQUIRED.—Conceding that section 2224 of the Civil Code, making one who obtains a thing by fraud an involuntary trustee for the benefit of the person who would otherwise have had it, is broad enough to cover property acquired by a decree of distribution, it can only apply where the fraud is shown to be extrinsic and collateral to the merits of the proceeding for the distribution, and is so clearly and satisfactorily shown as to justify a court of equity in setting aside the decree for fraud in its procurement.

ID.—ACTION BY HEIRS TO ENFORCE TRUST—NONSUIT.—In an action by heirs omitted from a decree of distribution to enforce an involuntary trust against the distributee, on the ground of fraud, if there is no showing of extrinsic or collateral fraud, and no satisfactory showing of the existence of any fraud, a nonsuit is properly granted.

ID.—FAILURE OF WIDOW TO INFORM NONRESIDENT RELATIVES.—The fail-ure of the widow of the decedent, to whom the estate was dis-tributed, to inform the relatives of her husband living in other states of the death of her husband is immaterial upon a charge of fraud. No legal duty devolved upon her to furnish them with that information.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. James M. Troutt, Judge.

The facts are stated in the opinion of the court.

Myrick & Deering, and L. A. Gibbons, for Appellants.

Henry H. Reid, W. H. Bodfish, Beatty & Beatty, A. Ruef, and Shortridge, Beatty & Brittain, for Respondents.

GAROUTTE, J.—Arthur Waters died intestate in the city of San Francisco, leaving a wife, Elizabeth, here, and a sister and nephews in other states. Administration was had upon his estate, and in due time and after due notice, a decree of dis-tribution was entered, which found that the wife, Elizabeth, was the only heir of her husband, and all of his estate was there-upon distributed to her. Subsequently, she died, and these de-fendants are her successors in interest. Plaintiffs—a sister of Arthur Waters, deceased, and a certain nephew and niece—brought this action, claiming to be his heirs at law, and assert-ing that the wife, Elizabeth, under the decree of distribution, held their respective shares of the property as an involuntary trustee. They were nonsuited, and judgment went against them. The sufficiency of the evidence to support the judgment will be the material matter considered upon this appeal.

As a legal foundation upon which to rest their claims, plain-tiffs rely upon section 2224 of the Civil Code, which says: "One who gains a thing by fraud, accident, mistake, undue influence, . . . . or other wrongful act, is . . . . an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." For present purposes, it will be con-ceded that this section, in its terms, is broad enough to apply to judgments of courts adjudicating property rights; and here fraud upon the part of the wife, Elizabeth, in securing a judg-

ment, is relied upon to support a recovery. In cases of this character, in order to substantiate the charge of fraud, evidence must be produced which is fully satisfactory to the judicial mind. The rule is clearly stated in *Wickersham v. Comerford*, 104 Cal. 495, where this court said: "It was necessary for the plaintiff to establish by clear and indubitable proof, to the satisfaction of the superior court, that the order setting apart the homestead had been obtained through some fraud practiced upon that court by the defendant. . . . . She cannot be charged with fraud or any fraudulent imposition upon the court for merely failing to state in her petition any facts tending to show that the petition ought not to be granted, unless it is made to appear that she knew the import of these facts, and that they were willfully suppressed by her with the intention of deceiving the court and thereby inducing it to grant her petition." Again, fraud must be shown which is extrinsic and collateral to the cause. It is held in *Pico v. Cohn*, 91 Cal. 129,[1] that neither perjury, nor subornation of perjury, constitute a fraud which will support a cause of action to set aside a judgment based thereon. In *Fealey v. Fealey*, 104 Cal. 354,[2] this court said: "The fraud which is set forth as the basis of the plaintiff's cause of action relates to the alleged falsity of defendant's statement made in her petition for the order setting aside the homestead, and again repeated in her testimony upon the hearing of such petition, concerning the nature of the title to the land set apart to her as a homestead; but the question of title thus presented and sought to be litigated in this action was necessarily involved in the proceeding to set apart the homestead, and the order or judgment of the court therein was a determination that the allegation of defendant's petition in regard to the nature of the title to the land so set apart was true, and that her testimony relating to the same matter given upon the trial of that proceeding was also true. . . . . Under these circumstances, that judgment is conclusive upon the plaintiff, and she cannot be permitted to bring into litigation the same matters therein involved and settled by that judgment." *Lynch v. Rooney*, 112 Cal. 279, is similar to the case at bar, save that the ground there relied upon for equitable relief was not fraud but mistake. In that

---

[1] 25 Am. St. Rep. 159.          [2] 43 Am. St. Rep. 111.

case it was held that the decree of distribution was final and conclusive upon all questions of heirship. The aforesaid section of the Civil Code relating to involuntary trustees places mistake and fraud in the same category, and, if the reasoning in *Lynch v. Rooney, supra,* be sound, the same reasoning must control here.

In treating of decrees of distribution, section 1666 of the Code of Civil Procedure reads: "In the order or decree the court must name the persons and the proportions or parts to which each shall be entitled. . . . . Such order or decree is conclusive as to the rights of heirs, legatees, or devisees, subject only to be reversed, set aside, or modified on appeal." The all-important question upon the hearing of a petition for a decree of distribution of the estate of an intestate is, Who are the heirs entitled to take the estate? The identity of the heirs being determined, the proportion of each is not a difficult question to decide; for the law itself fixes those proportions; and if the question of heirship is not settled by the decree of distribution, then nothing is settled by it, and the whole proceeding is a vain and useless thing. And this section of the code declares in terms that the decree, subject to appeal, is conclusive as to the rights of heirs, legatees, and devisees. Hence it must be the rule that, conceding section 2224 is broad enough to cover property gained by a judicial decree, still it only applies to cases where the fraud is such as would justify a court of equity in setting aside a judgment.

We here have a judicial decree that these plaintiffs are not heirs at law of Arthur Waters, deceased—a decree that has never been assailed, and which by the very terms of the section quoted has become final and conclusive. It seems idle to say that the validity of the decree is recognized by the plaintiffs, and that they rely upon its validity in seeking relief. They are only entitled to the relief sought by showing circumstances in the procurement of the decree itself which would justify a court of equity in setting it aside for fraud. If those circumstances are not shown, they secure no relief. They must attack and overthrow the finding of fact in the decree as to the heirship of the wife Elizabeth—a finding expressly placed there by direct authority of the statute—in order that they may show themselves

heirs at law of the deceased, Arthur Waters. It therefore seems inevitable that, in order to secure the relief here sought, they must go behind the decree and falsify the important finding of fact upon which it is based.

In view of the decision in *Pico v. Cohn, supra,* and other cases cited, if these plaintiffs had appeared in person at the hearing upon the petition for distribution, and had litigated the question of heirship and lost their cause, certainly that decree, aside from the question of extrinsic and collateral fraud, would have forever foreclosed them from bringing an action of this character. But now the point is made that plaintiffs only had constructive notice of the hearing, and for that reason a different rule of law applies. The case of *Dunlap v. Steere,* 92 Cal. 344,[3] and the authorities cited in that decision, are relied upon to support this contention; but that the rule there declared ever applied to a proceeding *in rem* we gravely doubt. A proceeding to secure a decree of distribution is essentially a proceeding in the nature of one *in rem.* It has none of the characteristics of a proceeding *in personam,* as was the case of *Dunlap v. Steere, supra.* In *William Hill Co. v. Lawler,* 116 Cal. 359, this court, speaking through Mr. Justice Harrison, said: "The distribution of the estate includes the determination of the persons who, by law, are entitled thereto, and also the proportions or parts to which each of these persons is entitled. . . . . By giving the notice directed by the statute, the entire world is called before the court, and the court acquires jurisdiction over all persons for the purpose of determining their right to any portion of the estate; and every person who may assert any right or interest therein is required to present his claim to the court for its determination. Whether he appear and present his claim, or fail to appear, the action of the court is equally conclusive upon him, 'subject only to be reversed, set aside, or modified on appeal.' The decree is as binding upon him, if he fail to appear and present his claim, as if his claim after presentation had been disallowed by the court." In view of this clear and forcible language, emanating from the court in Bank, it would seem that the plaintiffs' claim entirely dissolves, to the extent, at least, of the principle of law invoked in *Dunlap v. Steere, supra.*

[3] 27 Am. St. Rep. 143.

The nonsuit was properly granted on the evidence. There was no extrinsic or collateral fraud. Fraud must plainly appear from the evidence, and here it does not appear at all. There is some general evidence tending in an unsatisfactory way to show that Elizabeth Waters knew of the existence of these plaintiffs several years prior to the death of her husband. There is also some evidence showing that she told W. H. Metson, an attorney at law who prepared the petition for letters of administration in behalf of Grant and Pennell, petitioners for letters, that her husband had no relatives; and this is all the evidence of fraud that we can find in the record. The showing made is too weak to stand alone. It would not support a judgment if one rested upon it. The fact that Elizabeth Waters did not inform these relatives, living in different states, of the death of her husband, is not material here. No legal duty devolved upon her to furnish them with that information. Again, there is nothing to indicate that she acted in bad faith at any stage of the administration, or made the statements to Metson with the purpose or design of defrauding anybody, or of imposing upon the court. There is no evidence showing that she knew these plaintiffs were entitled to any part of the estate as heirs at law of her husband. There is no evidence showing that the decree of distribution, wherein it is found as a fact that she was the only heir, was based upon her testimony, or upon any testimony induced by her to be given before the court. If this decree was based upon the testimony of Grant, one of the administrators, as claimed by plaintiffs, there is no evidence but that his knowledge or information upon the subject came from his friend, Arthur Waters, during his lifetime, or from some source other than that of Elizabeth Waters. And if all of these things had appeared by the evidence, then whether or not they constituted extrinsic fraud would still be an open question. Tried by the test laid down in *Wickersham v. Comerford, supra,* the nonsuit was properly granted.

The errors of law relied upon are unsubstantial.

For the foregoing reasons the judgment and order are affirmed.

McFarland, J., Henshaw, J., Temple, J., and Harrison, J., concurred.

VAN DYKE, J., dissenting.—I dessent. The purpose of the
proceeding is not to disturb this action of the probate court
at all; that court had jurisdiction of the matter in question, and
upon the testimony and showing before it the decree of distribu-
tion could not well have been different from the one entered.
The question here is whether a party who has succeeded in ob-
taining a thing through fraud can be compelled to yield it to
whom it properly belongs and who would not have been de-
prived of it excepting through such fraud. Our code lays down
the general rule in such cases in the following language: "One
who gains a thing by fraud, accident, mistake, undue influence,
the violation of a trust, or other wrongful act, is, unless he has
some other and better right thereto, an involuntary trustee of
the thing gained for the benefit of the person who would other-
wise have had it." (Civ. Code, sec. 2234.) It is alleged in the
complaint that the plaintiffs were prevented from appearing and
presenting their claims by the fraudulent conduct of Elizabeth
Waters, who willfully and intentionally represented to the court
that she was the sole and only heir, when she knew the plain-
tiffs were also heirs of the deceased husband and entitled to a
share of his estate.

In Story's Equity Jurisprudence it is said: "In general, it
may be stated that in all cases where, by accident, or mistake,
or fraud, or otherwise, a party has an unfair advantage in pro-
ceedings in a court of law, which must necessarily make that
court an instrument of injustice, and it is therefore against con-
science that he should use that advantage, a court of equity will
interfere and restrain him from using the advantage which he
has thus improperly gained." (Story's Equity Jurisprudence,
sec. 885.) To the same effect the rule is stated in Pomeroy's
Equity Jurisprudence, section 1053. (*Moore v. Crawford*, 130
U. S. 128.) In *Wickersham v. Comerford*, 96 Cal. 439, it was
claimed by defendant, as here, that the facts stated in the com-
plaint did not constitute fraud of which the plaintiff was en-
titled to complain. The justice, in writing the opinion in that
case, says: "The complaint charges a willful suppression of a
material truth, and a suggestion of a falsehood by defendant,
with intent to deceive and mislead the court, to the prejudice of
the creditors of the estate, and avers that such suppression and

suggestion had the intended effect, to the injury of the plaintiff, who was one of such creditors. I think this constituted fraud." In *Wingerter v. Wingerter,* 71 Cal. 105, the defendant had been the administrator upon the estate of his deceased brother, who died in Los Angeles county. The plaintiff was the son of that deceased brother, but resided in the state of Missouri. The defendant, as such administrator, induced the plaintiff, as heir of his deceased father, through false representations, to convey to him, the defendant, his interest in the estate, and afterward procured the interest to be distributed to him by the probate court. Held, that the defendant was an involuntary trustee for the plaintiff of the property so fraudulently obtained, and that the plaintiff was entitled to the relief sought, to wit, the recovery of the property. (See, also, *Lataillade v. Orena,* 91 Cal. 576[4]; *Dunlap v. Steere,* 92 Cal. 347[5]; *Bergin v. Haight,* 99 Cal. 52-56; *Curtis v. Schell,* 129 Cal. 208, where the question is fully discussed.)

The complaint in this case states a cause of action entitling the plaintiffs to the relief asked, and the evidence at least tended to support the material allegations of the complaint. This was sufficient to prevent a nonsuit. (*De Ro v. Cordes,* 4 Cal. 117; *Cravens v. Dewey,* 13 Cal. 40; *McKee v. Greene,* 31 Cal. 418.)

---

[4] 25 Am. St. Rep. 219.      [5] 27 Am. St. Rep. 143.